No. 51,356

Edward E. Case, *Petitioner,* v. Daniel R. Andrews, Lyon County Sheriff, *Respondent.*

(603 P.2d 623)

Opinion filed December 1, 1979.

*Michael C. Helbert,* of Guy and Helbert, of Emporia, argued the cause and was on the brief for the petitioner.

*Jay W. Vander Velde,* Lyon County Attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for the respondent.

The opinion of the court was delivered by

Prager, J.: This is an original action in habeas corpus brought pursuant to K.S.A. 60-1501. The petitioner, Edward E. Case, claims deprivation of due process in the denial of his Sixth Amendment right to confer privately with his counsel while being held for trial in the Lyon County jail at Emporia.

The facts in the case have been stipulated by the parties and are as follows: Petitioner is currently incarcerated in the Lyon County jail pending trial on a criminal complaint. Michael C. Helbert was appointed counsel for Case and conferred with his client in the jail. The room provided for attorney-client consultation is divided by a steel wall with a small glass window, which prohibits any physical contact with the petitioner. The prisoner's side of the conference room is 8´6´´ deep, 4´10´´ wide, and 9´10´´ high. The attorney's side is 8´6´´ deep, 6´6´´ wide, and 7´8´´ high. This room is visually monitored by a permanently-mounted camera at the rear of the attorney's end of the room. The camera is not wired for sound. The only alternative location for an attorney-client conference is the defendant's cell, which is equipped with a microphone capable of picking up and/or recording conversations.

On August 1, 1979, during a conference with petitioner, attorney Helbert placed his suit coat over the camera lens to insure a

"confidential atmosphere." Deputy Sheriff Charles Schreck interrupted the conference to demand that the coat be removed. When Helbert declined to remove his coat, Schreck consulted with Judge R. E. Miller who confirmed the sheriff's position. The coat was then removed, and this action filed requesting restraint of respondent's televising, photographing, filming, listening to, or recording attorney-client conversations.

Petitioner claims such visual surveillance of an attorney-client conference constitutes an illegal condition of detention. The issue before this court is whether the visual surveillance of the attorney-client conference was justified by some compelling state interest or whether it was an unreasonable interference which deprived the petitioner of his Sixth Amendment right to the effective assistance of counsel.

There are many cases dealing with the right to private communications between the prisoner-accused and his counsel. None are factually similar, so there is no easy disposition of the issue. Moreover, there are cases on both sides of the issue, many without sufficient factual statements to be helpful.

The Sixth Amendment right to the effective assistance of counsel is applicable to the states through the Fourteenth Amendment. *E.g., Gideon v. Wainwright,* 372 U.S. 335, 9 L.Ed.2d 799, 83 S.Ct. 792 (1963); *Martinez Rodriguez v. Jimenez,* 409 F.Supp. 582, 594 (D. Puerto Rico 1976). The right to counsel includes the right to confidential attorney-client communications. *Adams v. Carlson,* 488 F.2d 619, 631 (7th Cir. 1973); *Krull v. United States,* 240 F.2d 122, 126 (5th Cir.), *cert. denied* 353 U.S. 915 (1957). The right to private and confidential communications is not absolute, however, and is subject to reasonable regulation. *Baker v. Beto,* 349 F.Supp. 1263 (S.D. Tex. 1972); *Smith v. Peyton,* 276 F.Supp. 275, 277 (W.D. Va. 1967); *Krull v. United States,* 240 F.2d 122; *Matter of Hughes v. Cashin,* 184 Misc. 757, 54 N.Y.S.2d 437 (1945). Most courts have required some justification, generally security reasons, for any intrusion on the privacy of the attorney-client consultation, *Adams v. Carlson,* 488 F.2d at 632, and do not impose the "compelling state interest" standard of justification showing of harm or prejudice. See, *e.g., Owens-El v. Robinson,* 442 F.Supp. 1368 (W.D. Pa. 1978) (Overcrowding of the attorney-client conference room was occasional rather than constant, and mere speculation that the crowded conditions might interfere

with defense preparation held insufficient to warrant judicial interference); *Krull v. United States*, 240 F.2d at 126. (Although corrections officer was present during the attorney-client conference, there was no constitutional infringement as there was no showing that the information was overheard, passed on to the prosecutor, or that the defense was hampered or prejudiced.)

Petitioner relies mainly on *Ahrens v. Thomas*, 434 F.Supp. 873 (W.D. Mo. 1977), where the lack of facilities for private consultation between client and attorney was held to deny the defendant his Sixth Amendment right of access to the courts. Petitioner also cites *Owens-El v. Robinson*, 442 F. Supp. 1368; *Jones v. Wittenberg*, 440 F. Supp. 60 (N.D. Ohio 1977) (Partition between prisoner and attorney ordered removed and soundproof doors ordered installed); *Moore v. Janing*, 427 F. Supp. 567 (D. Neb. 1976); *Goldsby v. Carnes*, 365 F. Supp. 395 (W.D. Mo. 1973) (Private attorney consultation rooms to be provided free of both audio and visual intrusion except one small look-through glass panel); *Collins v. Schoonfield*, 344 F. Supp. 257 (D. Md. 1972) (City jail conditions which allowed attorney-client conversations to be overheard by jail personnel and other prisoners held to violate the constitutional right to counsel absent justification).

Respondent counters with cases allowing visual observation of attorney-client consultations in the prison setting. See, *e.g., Baker v. Beto*, 349 F. Supp. at 1271 (Observation of prisoner and visitor without attempt to listen is reasonable as "obviously necessary" for prison security). *Morales v. Turman*, 326 F. Supp. 677 (E.D. Tex. 1971); *People v. Del Rio*, 25 Misc. 2d 444, 207 N.Y.S.2d 186 (1960); *Krull v. United States*, 240 F.2d at 122; *Matter of Hughes v. Cashin*, 184 Misc. 757, (Consultation room was 45´ long, so it was possible for the prisoner and counsel to confer "out of earshot but under visual supervision"); *William Frank Ellis v. The State*, 149 Tex. Crim. 583, 197 S.W.2d 351 (1949). See also *Ray v. Rose*, 392 F. Supp. 601 (W.D. Tenn. 1975) (Stressing the prison's responsibility for prisoner safety and to prevent escape, the court okayed closed circuit monitoring of the hallway and cell, the screening of letters, and the log of all visitors of the infamous James Earl Ray, especially since there was no showing of prejudice).

Other cases not cited by the parties more adequately explain the rationale behind the decisions. For example, in *Adams v. Carl-*

*son,* 488 F.2d at 624, prison authorities modified the attorney's visiting room when gunpowder from the "outside" was found in a prisoner's cell. The modification consisted of a soundproof, glass partition between the prisoner-client and his attorney. Communications were by telephone. Noting that the constitutional right of counsel includes the right of private consultation, the burden was placed on the prison authorities to show some threat to the order or security of the prison. The court noted that attorneys were officials of the court, and to justify an impairment of the private consultation, the prison authorities were required to present facts to support a reasonable suspicion that the *attorneys* were involved in the contraband smuggling.

*Stover v. Carlson,* 413 F. Supp. 718 (D. Conn. 1976) involved interference with attorney-prisoner communications through the mail rather than face-to-face. Prison authorities opened letters stamped "attorney-client" only in front of the prisoner to check for contraband. To achieve this privileged status, the letters were required to specifically designate "attorney-client," though neither the prisoners nor their attorneys were notified of this requirement. In ordering the practice to cease, the court held that even one accidental opening outside of the prisoner's presence chilled his Sixth Amendment rights. It was stressed that the practice furthered no "substantial governmental interest of security, order, or rehabilitation," but significantly limited Sixth Amendment freedoms.

Finally, *Fowler v. State,* 6 Md. App. 651, 253 A.2d 409 (1968), mainly concerned the voluntariness of incriminating statements of the accused. Defendant had been picked up on bad check charges and while in custody, was interrogated about a rape murder. The right-to-counsel issue was present because, during the interrogation, defense counsel met with defendant and requested a private consultation. The police detectives refused to leave the room, and defendant and counsel spoke in low tones for around fifteen minutes. It was held that the right to confer with counsel prior to questioning "contemplates a consultation outside the immediate earshot and superintending presence of law enforcement officers." (p. 671.)

At the outset, it should be stated that habeas corpus is an appropriate remedy in this case. In *Levier v. State,* 209 Kan. 442, 497 P.2d 265 (1972), it was held that habeas corpus provides an

appropriate remedy for inquiry into mistreatment of a continuing or probably continuing nature alleged by an inmate of a penal institution. A determination of the issue raised in this case is particularly important, because it appears that the visual surveillance complained of by the petitioner has become the standard practice followed by the sheriff of Lyon County with the approval of the district judge. We have concluded that under the factual circumstances presented, the Lyon County jail policy of visually monitoring all consultations between attorneys and clients is an unreasonable interference with the right to confidential attorney-client communications. The confidentiality of communications between an attorney and his client who is charged with crime should be carefully protected by the courts. Such communications in a jail setting should be afforded as much privacy as is reasonably possible under the circumstances. If there is a private room readily available, it should be made available to the jail inmate and his attorney. If there is no private room available, then as much privacy should be afforded as is reasonably possible under the circumstances.

In the case now before us, the petitioner and his counsel requested privacy through the simple device of hanging counsel's coat over the television camera lens to insure a "confidential atmosphere." The respondent has offered us no sufficient justification for the denial of the request. The respondent has made no showing that the practice of denying such requests furthers any substantial governmental interest in security, order, or rehabilitation. Counsel for respondent in his brief refers to the Kansas Advisory Jail Standards and Procedures published by the Kansas Department of Corrections. Section 15 of the jail standards provides as follows:

"Right to Consult with Attorney. Any person committed, imprisoned or restrained of his liberty for any cause whatever and whether or not such person is charged with an offense should, except in cases of imminent danger of escape, be allowed to consult with any licensed attorney at law of this state whom such person may desire to see or consult, *alone and in private at the place of custody,* as many times and for such period each time as is reasonable. When any such person is about to be moved beyond the limits of this state under any pretense whatever, the person to be moved should be entitled to a reasonable delay for the purpose of obtaining counsel and of availing himself of the laws of this state for the security of personal liberty." (p. 18.) (Emphasis supplied.)

It does not appear that the respondent has complied with that section to the extent reasonably possible.

It must be emphasized that attorneys are officers of the court. It should be presumed, absent a contrary showing, that an attorney representing an incarcerated client will strive to uphold the credibility and standards of the judicial system rather than to subvert them. Absent a showing of any risk to the order or security of the jail, the practice of visually monitoring an attorney-client conference when privacy is requested, is unreasonable. Such unreasonable interference violates an accused's Sixth Amendment right to effective representation by counsel. Accordingly, the writ is allowed and the respondent, Daniel R. Andrews, sheriff of Lyon County, is directed to permit attorneys consulting clients held in the county jail to place their coats over the television camera lens during such a conference.

Judgment is entered in favor of the petitioner.

FROMME, J., not participating.