## WILLIAM FRANK ELLIS V. THE STATE.

No. 23407. Delivered October 9, 1946.
Rehearing Denied November 20, 1946.

The opinion states the case.

*Milton K. Norton,* of Dallas, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

DAVIDSON, Judge.

Robbery is the offense; the punishment, fifteen years in the penitentiary.

The pivotal questions presented for our determination are: (a) Under the facts here presented, was the appellant denied the right of representation by counsel, as guaranteed by the Constitution of this State? (b) If so, does such denial require a reversal of the conviction?

Appellant was under arrest and confined in jail at the time the indictment was returned. He so remained until the trial—about three weeks thereafter. Appellant's attorney requested permission to privately consult with his client prior to trial. The request was refused. The attorney was, however, permitted to interview and consult, at will, with his client in what is referred to as the "interview room" in the jail.

The issue, then, is whether the "interview room" consulta-

tion was sufficient to comply with the constitutional mandate referred to.

The "interview room" consisting of two cells of steel construction, each about four feet square. A space of approximately fifteen inches separated the two cells. The abutting wall of each cell consisted of a solid steel panel for a height of about four feet from the floor. From that point to the ceiling, each wall was of heavy, closely woven mesh wire. A pane of glass about eighteen inches square was inserted in each wall.

During an interview the attorney would be seated in one cell opposite the glass panel; the client would be seated in a corresponding position in the other. It was only through the glass panel that the occupant of one cell could see the other and this view was limited to the head and shoulders. Demonstrations with the feet or lower limbs of one could not be seen or observed by the other. A whispered or subdued conversation could not be maintained between the occupants of the two cells. No opening existed in the two walls. Documents or papers for signature or examination could not be passed from one to the other.

The cell or room occupied by the attorney opened onto the jail corridor and was within fifteen feet of the entrance to the jail, as also the office of the jailer. Jail employees or any others passing along the corridor could see and observe the attorney and hear his ordinary conversation.

In keeping with his contention that he had not been accorded the full and complete right of consultation with his counsel, appellant—upon the call of the case for trial—filed a motion for continuance, asking that the case be continued until he had been accorded that right.

Evidence was heard upon the motion and the foregoing facts were developed, at the conclusion of which the motion was overruled. However the sheriff—under instruction of the trial court—permitted the appellant and his counsel to privately and without restriction consult during the noon recess of court, which lasted for two hours. Upon the re-convening of court the case proceeded to trial, appellant and his counsel being present throughout the trial.

Under our Bill of Rights (Const., Art. 1, sec. 10), one accused of crime is entitled to be represented by counsel. This guarantee does not mean merely representation at the trial of

the case by counsel but carries with it the right of consultation with and advice by counsel in the preparation of the case for trial.

Under the facts here presented, we are constrained to agree with the appellant that the limiting of his right of consultation with his attorney to the "interview room" constituted a violation of the constitutional guarantee mentioned.

The close proximity of the jailer, jail employees, and others in and around the jail and the further fact that any conversation between the attorney and appellant was necessarily required to be in at least an ordinary tone of voice are important factors which enter into and support the conclusion reached.

As sustaining the views here expressed, see: Turner v. State, 91 Tex. Cr. R. 627, 241 S. W. (2d) 162, 23 A. L. R. 1378; McBride v. State, 121 Tex. Cr. R. 549, 51 S. W. (2d) 337; 14 Am. Jur., p. 885, Sec. 171; Ann. 54 A. L. R. 1225; Re Snyder, 62 Cal. 697, 217 Pac. 777; Ex parte Qualls, 136 Pac. (2d) 341.

The question remaining is whether the limitation of consultation requires a reversal of the conviction.

In this connection, it will be noted that we are not here dealing with the question of an entire or complete denial of representation by counsel either of prior consultation or upon the trial of the case. The only issue before us arises out of the limitation imposed upon appellant's right of consultation before trial. Here, appellant was represented by counsel upon and during the trial of the case. For a period of two hours before the trial he was accorded the complete and unrestricted right of consultation with his attorney. Also, appellant was accorded the consultation in the "interview room."

Such being the case before us, the rule of law long recognized by this court to the effect that the violation of a mandatory statute or of some constitutional right or privilege, in the trial of a criminal case, constitutes reversible error is neither applicable nor controlling here. Rather, the question as to whether this conviction is or is not to be reversed turns upon whether the consultation accorded appellant with his counsel were so unreasonable and of such a nature and extent as to constitute a violation of the constitutional right of representation by counsel, in determining which we must of necessity look to the case as a whole.

Appellant was positively identified by several witnesses as the person who, at the point of a pistol, robbed the injured party of $654.00. No defense or mitigation was shown, offered, or suggested to that accusation upon the trial of the case. It was shown that appellant was under five other indictments for robbery. At no time after trial and after appellant and his counsel had heard the State's testimony and consulted freely and without limitation during the trial did the appellant claim or assert that he did in fact have a defense to the accusation against him or that, by unlimited private consultation with his attorney prior to trial, a defense or mitigating circumstances could have or might have been presented in his behalf upon the trial of the case.

Such being the facts we cannot bring ourselves to the conclusion that the limitation imposed upon appellant's right to consult with his attorney before trial was so unreasonable as to constitute a denial of the constitutional guarantee mentioned and the resultant reversal of the conviction. It follows, therefore, that the trial court did not err in overruling appellant's motion for a continuance.

Bills of exception complain of argument of State's counsel. The argument complained of in each violated no statutory or mandatory rule, nor was it inherently vicious or prejudicial. Moreover, the objection to the argument is shown only as a statement of objections which are in no manner certified as true or existing as a matter of fact in any bill of exception. Obviously, therefore, such bills of exception fail to reflect reversible error. 4 Tex. Jur., p. 390, sec. 262. The remaining bill of exception has been examined and is overruled without discussion.

No reversible error appearing, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant complains because of the fact that we failed to write on his bills of exception with the exception of his Bill No. 1, wherein it was held that the court gave him sufficient time in which to consult with his client. He contends that all quali-

fications of the trial court have been eliminated from all his ten bills of exception because of the fact that he refused to accept such bills as qualified by the court and properly excepted thereto and displaced them by a bystanders' bill filed by him after the trial court had prepared the court's bill in each of the ten instances. In all of the trial court's bills, the proffered bill of appellant was copied, and there was added thereto the trial court's qualification, and as thus constituted, same was filed as the court's bill. Appellant attempts to nullify the trial court's qualification to said bills by filing one general bystanders' bill in the following language:

"We, the undersigned citizens of the State of Texas, hereby attest that we are fully informed and understand the contents of the foregoing bills of exceptions; that we were bystanders in the court, and present when the matters related in said bills of exceptions occurred, and we are fully cognizant of said matters and, the said bills of exceptions, which the judge presiding at said trial has refused to sign, is correct, and truly represents the facts as they really transpired.

"/s/ Floyd McCullough<br>
"/s/ Mrs. Robert Hill<br>
"/s/ S. J. Nassie."

Nowhere in such bystanders' bill is any reference made to any certain bill, nor to any qualification thereof, but such single affidavit attempts to contradict all of the ten bills by saying that all of said bills, as refused by the trial judge, are correct. As to the things actually set forth in the bills as happenings, there seem to be no controversy. It is only in the qualifications of the trial court that any diversity of opinion appears, and appellant seeks by this one bystanders' bill to supersede and nullify all ten bills without mentioning them by number. We confess our inability to find any precedent therefore, and do not think that such bystanders' bill should be considered by us, it being too indefinite and vague to furnish any information to this court as to which one of the ten bills is not correct. We are unwilling to say that ten bills prepared and filed by the trial court can be set aside by one bystanders' blanket bill asserting the correctness of ten separate bills filed by appellant. Such bystanders' bill is at least multifarious and contains more than one subject. To consider such bystanders' bill as effective would be to say the qualification to each individual bill was incorrect and did not happen, which we are unwilling to do under the procedure here present. We are therefore relegated to the bills prepared and filed by the court.

In Bill No. 1, it is shown that upon the matters therein complained of being called to the attention of the court, he ordered that the sheriff provide for a private interview to be had between appellant and his attorney, which was done, and appellant had about two hours in time in which to have such consultation before this case proceeded to trial. It is here worthy of note, however, that some two weeks prior to appellant's indictment in six felony cases, he had been represented by his present attorney in the examining trials therein, and had access to his attorney during such examining trials in the Justice Court, where the matter relative to this robbery was the subject of examination.

It is also noticed that neither at the trial, nor at the time of the hearing of the motion for a new trial, was any attempt made to obtain or utilize any testimony herein. Appellant was positively identified as the robber by witnesses, and he offered no testimony save that he was 19 years of age, and was raised in Dallas County. No additional testimony was offered or suggested, either at the trial or in the motion for a new trial.

Appellant's Bill of Exception No. 2 relates to the State being allowed to prove by two peace officers that about three weeks after this robbery, having been given a description of this robber, they were looking for him, not knowing his name; that they saw a man pass them in a car of the description given them; that they followed him, and as they "appeared alongside of his car, they saw him fooling with that gun, that nickel-plated gun there. He had that gun strapped to his waist, and he unwrapped it and put it down on the floor. That was as we were approaching the car." The officers then proceeded to arrest appellant, and upon asking him where the other gun was, he showed them where it was hidden between some cardboard and the body of the car. This later-found gun was exhibited to the witnesses at the robbery and each of them said it was the same color and kind of gun used by appellant at the robbery. Under these facts we think the arrest and detention of appellant was not illegal. See Art. 487, P. C.; 4 Tex. Jur. p. 759, sec. 12; Merriman v. State, 20 S. W. (2d) 1051; Miller v. State, 32 Tex. Cr. R. 319, 20 S. W. 1103; Salasar v. State, 108 Tex. Cr. R. 381, 1 S. W. (2d) 314.

There are other matters relative to the argument of the Assistant District Attorney found in further bills of exception here present. In each of such bills it is shown that no request was made of the trial court to instruct the jury to disregard the

same. Such a request should have been made. See Branch's Ann. Tex. P. C., p. 204, sec. 362. However, we are not impressed with the matters set forth in these bills as of such a serious nature as that they would require a reversal of this case.

The motion for a rehearing will therefore be overruled.